**In the Matter of BOSTON AND MAINE CORPORATION, Debtor.**

**Bankruptcy No. 70–250–M.**

United States District Court, D. Massachusetts.

July 5, 1984.

See also, D.C., 46 B.R. 965; D.C., 46 B.R. 966; D.C., 46 B.R. 974; D.C., 46 B.R. 983; D.C., 46 B.R. 987; D.C., 46 B.R. 990.

Charles W. Mulcahy, Jr., Boston, Mass., for Managers of the Segregated Account, Boston and Maine Corp., debtor.

Carl Helmetag, Jr., Philadelphia, Pa., Gen. Counsel, Litigation, Penn Central Corp.

## MEMORANDUM

FRANK J. MURRAY, Senior District Judge.

The Managers of the Segregated Account (the "Managers")[1] have presented

their Application seeking approval of a compromise agreement made with the reorganization trustees of the Penn Central Transportation Company (the "Penn Central"). The subject matter of the compromise agreement includes (a) the claim made by the reorganization trustees of Penn Central against the reorganization trustees of the Boston and Maine Corporation (the "B & M"), and (b) the counterclaim made by the reorganization trustees of B & M against Penn Central.

The respective claims arose out of transactions which occurred before the Section 77 reorganization proceedings had begun against B & M on March 12, 1970, and against Penn Central on June 21, 1970. Penn Central filed proofs of claim against B & M on October 1, 1970 and on January 28, 1972, in the aggregate amount of $4,513,071.49.[2] On June 14, 1971 B & M filed its proof of claim against Penn Central in the amount of $753,927.83. Negotiations between B & M and Penn Central concerning (1) the dollar amounts of the respective claims, and (2) the question of priority of elements of the claims, e.g., six months claims and claims by necessity, took place from time to time after the proofs were filed. Analyses of the claims resulted in (a) agreed-upon reductions of the dollar amounts of the claims set forth in the respective proofs of claim, and (b) agreements as to the question of priority status of elements in the claim of each party.

The compromise agreement was made in 1983 on the basis of acceptance by each party of the following dollar amounts:

| | |
|---|---|
| Boston and Maine claim | $ 489,854.58 |
| Penn Central claim | $2,954,082.56 |

Before the compromise was agreed upon, B & M had asserted a "six months" priority as to $288,218.38 of its claim, and a "priority by necessity" of the balance of $201,636.20. Penn Central had not acknowl-

---

1. See the first supplemental order filed June 29, 1983 to the court's Consummation Order, entered June 17, 1983.

2. On September 29, 1978 Penn Central filed amendments to both proofs of claim, which reduced the aggregate amount of its claim to $4,070,668.16.

edged the priorities claimed, and treated B & M's claim as an unsecured claim.

In the proofs of claim filed by Penn Central, including the amendments, a "six months" priority and, in addition, a claim of "priority by necessity" were asserted. In January 1983 B & M acknowledged a "six months" priority, in the amount of $661,-367.41 for claims accrued in the period September 13, 1969 to March 12, 1970, and rejected Penn Central's assertion of a "six months" priority of claims in excess of that amount. B & M acknowledged no priority of Penn Central's claim on any theory of "priority by necessity".

The compromise agreement is based on liquidating and satisfying B & M's claim of $489,854.58, as follows:

1. *In cash, to be paid to the Managers by Penn Central*
   (a) $50,000.00, and interest thereon at the rate of 8% from January 1, 1978, compounded annually, to the date of payment.[3]
   (b) $131,956.37 (the amount equivalent to 30% of $439,854.58, the balance of B & M's claim).

2. *In securities, to be delivered to the Managers by Penn Central*
   7953 shares of New Common stock of the reorganized Penn Central, determined by the following equation:

$$\text{no. of shares} = \frac{3}{2} \times \$ \frac{439{,}854.58}{\$\,96} + \$ \frac{439{,}854.58}{\$\,406.95}$$

3. *By Penn Central assuming the obligation* to satisfy the claim of The Pittsburgh & Lake Erie Railroad Company against B & M.

Under the compromise agreement Penn Central's claim of $2,954,082.56 would be liquidated and satisfied as follows:

1. *In cash, to be paid by the Managers to Penn Central*
   $661,637.41 (the amount B & M acknowledged as a "six months" priority).

2. *In B & M Certificates of Contingent Interest, Series D, to be delivered by the Managers to Penn Central*

in the face amount of $229,244.52 (the amount equivalent to 10% of the balance of Penn Central's claim).

In settling the terms of the compromise agreement, and the allocations of the several amounts, consideration was given by both parties to the following:

A. The Penn Central reorganization court in 1978 held that "six months" creditors were not entitled to priority status above other creditors. *Matter of Penn Central Transportation Company*, 458 F.Supp. 1234, 1325 (E.D.Pa.1978). While the appeal by "six months" creditors from that holding was pending, the Penn Central reorganization court approved a settlement relating to "six months" creditors. *Matter of Penn Central Transportation Company*, 458 F.Supp. 1357, 1363 (E.D.Pa.1978). Under the terms of the settlement, "[f]ifty per cent of the amount of each claim which would qualify for six months priority if there were a fund available for payment of such claims within the meaning of the six months rule" would be entitled to be treated as Class H claims under the Penn Central Plan of Reorganization; the remaining 50% of each claim would "continue to be classified within Class M [of the Plan], and treated accordingly". *Id.* Although approving the settlement, the reorganization judge (Fullam, J.) added that he remained "persuaded that none of these claims is entitled to six months priority in this case, for the reasons set forth at length in the Plan Approval Opinion". *Id.* at 1364.

B. This court had held in the B & M reorganization case that there was no basis upon the facts found for allowance of the priority claimed by "six months" creditors and that "no separate priority classification for six months creditors should be designated". *In re Boston and Maine Corporation*, 468 F.Supp. 996, 1008 (D.Mass. 1979). On the appeal taken from this ruling and order, the circuit court reversed "in so far as [the reorganization court] failed to provide a separate class of creditors" with six months priority. *In re Boston*

---

**3.** It was estimated at the hearing that the interest to January 1, 1983 is 58.6 per cent of the principal sum of $50,000.00, and that the principal and interest then approximated $79,300.00.

*and Maine Corporation,* 634 F.2d 1359, 1382 (1st Cir.1980).

C. In both the Penn Central reorganization court and this court in the B & M reorganization, claims of priority under the "necessity of payment" rule were asserted, and the rule was held inapplicable. The circuit court affirmed the reorganization court's holding in the B & M reorganization. 634 F.2d at 1382.

The compromise agreement was entered into following negotiations which took place over several years and after review from time to time of the relevant records, which have been characterized as "voluminous". Litigation of the respective claims would be the alternative course to pursue should the compromise agreement be not approved. It is not clear that the litigation of the respective claims could be resolved in but one of the reorganization courts. Forecasting the expenses of the litigation at this stage would be an unprofitable exercise, and much the same could be said of forecasting the results of somewhat complex litigation. The over-all impact of the compromise settlement on the B & M estate is not so great as to affect substantially the consummation of the plan of reorganization. No one has objected to the proposed settlement.

It is in the best interests of the estate of the Boston and Maine Corporation, Debtor, that the compromise agreement be executed promptly. The securities which the Managers will receive are actively traded on the New York Stock Exchange,[4] and the Managers should have the opportunity to dispose of the shares in a market which they consider to be favorable to the estate. The compromise agreement, as the court understands it, will be approved, and an appropriate order will be entered.

### ORDER

This matter came on to be heard by the court on the Application of the Managers of the Segregated Account for the court's approval of compromise of the claim of Penn Central Transportation Company (the "Penn Central") against Boston and Maine Corporation (the "B & M"), and the counterclaim of B & M against Penn Central. Upon consideration of the evidence presented, the representations made by the Managers of the Segregated Account and by the representative of the Penn Central Transportation Company, and the Memorandum filed herewith, it is, accordingly, ORDERED:

I. The compromise agreement of the claim of Penn Central against B & M, and the claim of B & M against Penn Central, be and the same hereby is approved.

II. The compromise agreement shall be executed on or before July 11, 1984, as follows:

A. *The Penn Central*

(1) shall pay to the Managers of the Segregated Account the aggregate sum of

(a) $50,000.00, and interest thereon at the rate of 8% from January 1, 1978, compounded annually, to the date of payment, and

(b) $131,956.37;

(2) shall deliver, or cause to be issued, to the Managers a certificate of New Common stock of the reorganized Penn Central Transportation Company representing not less than 7953 shares; and

(3) shall deliver to the Managers an indemnification agreement to hold the B & M and the Managers harmless for all loss, cost or damage arising out of a claim asserted against the B & M or the Managers by The Pittsburgh & Lake Erie Railroad Company.

B. *The Managers*

(1) shall pay to the Penn Central the sum of $661,637.41; and

(2) shall deliver, or cause to be issued, to Penn Central a Certificate of Contingent Interest, Series D, authorized by Section 3.1(2), as amended

---

**4.** The daily reports of current transactions show that the prices of the shares range around $46.00 per share.

February 25, 1982, of the Plan of Reorganization of the Boston and Maine Corporation, Debtor, in the face amount of $229,244.52.

III. No modification of the compromise agreement herein authorized shall be effected without the prior approval of the court.

